# APRIL TERM, 1890.

GEORGE HANLEY AND JAMES HANLEY v. HIRAM WALKER.

*Contracts—Construction of buildings—Payment—Condition precedent—Certificate of architect—Waiver—Acceptance of benefits.*

1. Plaintiffs contracted in writing to plaster five houses for the defendant, according to plans and specifications furnished by designated architects, which were made a part of the contract. Payments were to be made as the work progressed upon the architects' certificates, and the balance due was to be paid on the completion of the job, and its acceptance by the architects and owner, upon the certificate of the architects showing such performance and acceptance. Plaintiffs, without procuring any of such certificates, and without their waiver by the defendant, brought suit to recover the balance claimed to be due on the contract, and it is held that his failure to obtain such certificates, and to complete the work to the satisfaction of the architects, is a complete defense to such suit, no fraud on the part of the architects or collusion with the owner being shown.

2. The following propositions are summarized from the opinion of Chief Justice CHAMPLIN:

   *a*—Where a party fails to comply substantially with a nonapportionable agreement, he cannot sue or recover upon it at all. But when anything has been done from which the other party has received substantial benefit, a recovery may be had on the *quantum meruit*, the basis of which is not the original contract, but a new and implied agreement deducible from the delivery and acceptance of some valuable service or thing. *Allen v. McKibbin*, 5 Mich. 454.

   *b*—The principles laid down in *Allen v. McKibbin*, 5 Mich. 454, do not apply to cases where the parties have by their

agreement made some act or fact a condition precedent to payment, unless the other party has waived the condition, which waiver may be express, or implied from facts and circumstances, as where the party relying upon the condition has accepted or appropriated the property or fruits of the labor of the other party.

c—When a person contracts with another to erect, or to do some portion of the work in constructing, buildings upon real estate, his taking possession after the contractor has left the premises cannot be construed as an unequivocal acceptance of the work, but the most that can be said is that such act, and all of the circumstances, may be taken into consideration in determining whether there is an implied waiver of a condition precedent to such acceptance.

Error to Wayne. (Gartner, J.) Argued January 9, 1890. Decided April 11, 1890.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*William Aikman, Jr. (Atkinson, Carpenter, Brooke & Haigh*, of counsel), for appellant.

*John J. Speed*, for plaintiffs.

[The points of counsel and authorities will be found in the opinion.—REPORTER.]

CHAMPLIN, C. J. The plaintiffs composed the firm of George Hanley & Bro., who were house plasterers doing business in the city of Detroit. In 1886, defendant was building brick dwelling-houses situated upon John R. and Watson streets, in the city of Detroit. They were five in number. On May 26, 1886, the plaintiffs entered into a contract with defendant to do the plastering in these houses according to certain plans and specifications then prepared for said work by William Scott & Co., architects, which plans and specifications were made a part of the contract. The plaintiffs were to furnish and provide

all the good, proper, and sufficient materials and labor of all kinds as should be necessary and sufficient for completing and finishing the whole of the lathing and plastering of the five dwelling-houses, for the sum of $2,475. The contract contained this clause:

"It is also agreed by and between the parties that the specifications and drawings are intended to co-operate, so that any works exhibited in the drawings and not mentioned in the specifications, or *vice versa*, are to be executed the same as if they were mentioned in the specifications and set forth in the drawings, to the true intent and meaning of the said drawings or specifications, without extra charge, and, should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by William Scott & Co., and their decision shall be final and conclusive."

It also contained the following:

"The contractor, at his own proper costs and charges, to provide all manner of labor, materials, apparatus, scaffolding, utensils, and cartage, of every description, necessary for the due performance of the several works."

The fifth article reads as follows:

"Should the owner, at any time during the progress of said works, require any alteration of, deviation from, addition to, or omissions in, this contract, consisting of this agreement and the said plans and specifications, made a part hereof, he shall have the right and power to make such change or changes; and the same shall in no way injuriously affect or avoid this agreement, but the difference shall be added to or deducted from the amount of this contract, as the case may be, by a fair and reasonable valuation. No changes shall be made except by written notice from the owner, which may be served on the contractor, subcontractor, or foreman.

"No omission of work or materials from the plans or specifications shall be deemed extra work if the same is necessary to complete said building in accordance with the general design or purpose for which the same is intended, and the provisions of said plans and specifications, and no work shall in any case be considered extra

79 MICH.—39.

unless a separate estimate, in writing, for the same shall have been submitted by the contractor to the architect and the owner, and their signatures obtained thereto; and should any dispute arise respecting the true value of any extra work, or of the works omitted by the contractor, the same shall be valued by two competent persons,—one to be chosen by the owner, and the other by the contractor,—and these two shall have the power to name the third, in case they cannot agree, and the decision of the two shall be binding on all parties, in case there be no fraud or collusion."

The specifications required the first, second, and third stories to be plastered with two coats,—the first, of rich brown mortar; the second, excepting coves and splays, to be one hard coat white finish, with plenty of sand; finish composed of cold run putty and plaster of paris, well mixed and put on,—trowled down hard and smooth. They also required the contractor to put up centers, to cost $15 net, in each house, to be selected by the owner or architects.    The specifications also contained the following:

"Parlors, halls, sitting and dining rooms, to have plaster coves as shown in sketch, rough plastered, and set with pebbles and shells, combed as may be directed. Second-story halls, and two chambers in each house, to have nine splayed angles, rough plastered and coarse combed.    Plaster to run ¾ in beads on angles of all plastered angles, and finish and set ornamental brackets. The plasterer will remove all rubbish occasioned by his work from the premises, and leave the buildings broom clean; furnish and put up cotton cloth to the windows, where required; pay for all broken glass while he is performing his work; and furnish heat and labor for drying the plastering."

The contractors were to be paid from time to time, as the work progressed, upon the certificate of the architects, deducting 10 per cent., until the whole job was completed and accepted, when the balance and such percentage was to be paid upon the architects' certificate after

the expiration of 30 days after acceptance and approval by the architects and owner, and the full and satisfactory adjustment of all things pertaining thereto.    The contract relative to payment contained this proviso:

"That before each and every payment is made a certificate shall be obtained from, and signed by, William, Scott & Co., architects, to the effect that the work has been done, and materials have been furnished, in strict accordance with this agreement, said drawings and specifications, and that he considers the payment properly due.    Said certificate, however, is in no way to lessen the total and final responsibility of said contractor."

No time is stated in the contract when the work shall be begun, nor when it shall be completed.    Two facts, however, are suggested by the contract:

1. That the buildings were not then so far completed as to be in readiness for plastering.    This is apparent from the fact that the contract stipulates that Hanley & Bro. shall build the houses, and furnish all material therefor.    But this is not claimed, and explanation is found in the fact that a blank form of building contract was used in making the agreement for plastering.

2. The specifications show the plastering might not be performed until cold weather, as they provide that the contractor shall "furnish heat and labor for drying the plastering."

Hence it appears that it was in the contemplation of the parties, on May 26, that the work would be done when the season would require artificial heat to dry the plastering.

The plaintiffs claim that there were two modifications of the written contract:

*First.* On account of delay of the builders, the dwellings were not ready for the plasterers until late in the season of 1886.

The plaintiff George Hanley testifies that they entered upon the performance of the contract about the middle or last of October; that he had a conversation with

defendant about the 1st of October, in which, after mentioning the cause of delay, he said:

"'We are into the cold weather and we will have to provide some means of heating;' and he asked me to suggest something to get over the difficulty. I told him that the only way we could do it now would be by using salamanders and coke fires until such times as he would be able to get his proper heating arrangements in shape, and he said he would furnish the coke if I would supply the salamanders. He asked me if I could not make our mortar in the cellar, in order to protect it from the weather. I told him it was not necessary; that we could do it outside as well."

He further testified that salamanders were fit only for use in drying out the brown coat; that it is not usual to use them during the progress of the second coat, as it has a tendency to discolor the work; and that he did not use them in this work for that reason. He testified that the second coat was put on after the first coat was dry. From the testimony of Mr. Hanley, it appears that no modification whatever was made in the terms of the contract except that Mr. Walker agreed to furnish coke for the heating, which relieved Mr. Hanley of that expense.

The other modification claimed by Mr. Hanley to have been made was in reference to the manner in which the coves were to be finished. The testimony of Mr. Hanley in support of this claim is as follows:

"The coves were not put in according to specifications. They were finished in soap-stone, by an arrangement with Mr. Crittenden. I considered Mr. Crittenden was acting for Mr. Walker in his absence. Previous to Mr. Walker going away, I had an interview with him, and he said to me that anything I needed, to call down and see Mr. Crittenden, and, if there was anything I wanted an explanation about, to come down there and have a talk with Mr. Crittenden. He was in Mr. Walker's office, and apparently in charge of the office business,—book-keeping, or something of that kind. I called Mr. Crittenden's

attention to what would be the appearance of the work if put in according to specifications. So we finished the coves in soap-stone, according to the specimen furnished to Mr. Crittenden. * * * I told Mr. Crittenden that, while soap-stone was more costly work, as Mr. Walker was away, I would not charge anything additional for the change."

On cross-examination he testified:

"Mr. Walker did not say anything to me with regard to Mr. Crittenden's agency. He merely said, if I needed anything to go down and see him. That was in the latter part of November, as near as I can recollect; just before Mr. Walker went west."

The defendant testified in his own behalf that he never authorized any change in the plans and specifications. He claims that the work was not done according to the contract; that the last coat was not hard finish, but would rub off when touched, leaving a white powder upon the hand, and that the cove and finish was not in accordance with the specifications. On February 23, 1887, Scott & Co., architects, served notice upon plaintiffs that the plastering would not be accepted; that the surface rubbed off; that there was some defect in the last coat, or the frost had touched it; that, in order to make a good job, it would be necessary to calcimine the entire walls. On receipt of this notice, plaintiffs sent their men; and they sponged the walls, and claimed that they left them in good order. They received another notice that they had overlooked some closets; and they sent men, and sponged these off, and heard no more complaint until they called upon defendant to settle, who then claimed that the defect in the walls still existed, and that the cove work was not according to specifications. The plaintiffs admit payment to them of $1,000, but at what time it was made does not appear from the record.

The contract and specifications were introduced by the

plaintiffs upon the trial; and the most important question in the case is raised by the eighth request of defendant, that the court instruct the jury as follows:

"Under the contract in evidence, it is provided that, before any payments can be demanded by plaintiffs, they shall obtain a certificate from the architects. This they have not obtained, and your verdict should therefore be for the defendant."

It is claimed by defendant's counsel that the failure of plaintiffs to complete the work to the satisfaction of the architects, and procure their certificate, is a complete defense to this action. I think the point is well taken. There is no claim upon this record that the architects have been guilty of any fraud, or that there has been any collusion between them and the defendant. There is no pretense that the plaintiffs have applied for or requested the certificate required by the contract. When parties capable of contracting have deliberately entered into a written agreement in which, by all just rules of construction, the certificate of the architects is made a condition precedent to a right of action, such condition must be performed or its requirements waived. The authorities holding contracts like the one in question here valid are numerous. Leake, Cont. 640; Benj. Sales (3d Amer. ed.), § 575; *Morgan v. Birnie,* 9 Bing. 672; *Grafton v. Railway Co.,* 8 Exch. 699; *Clarke v. Watson,* 18 C. B. (N. S.) 278; *Goodyear v. Mayor,* Har. & R. 67; *Ferguson v. Gall,* 23 U. C. C. P. 66; *Smith v. Briggs,* 5 Denio, 73; *Railroad Co. v. McGrann,* 33 Penn. St. 530; *Reynolds v. Caldwell,* 51 Id. 298; *O'Reilly v. Kerns,* 52 Id. 214; *Gray v. Railroad Co.,* 11 Hun, 70; *Tyler v. Ames,* 6 Lans. 280; *Spring v. Clock Co.,* 24 Hun, 175; *Smith v. Brady,* 17 N. Y. 173; *Wyckoff v. Meyers,* 44 Id. 143; *Wangler v. Swift,* 90 Id. 38; *Tetz v. Butterfield,* 54 Wis. 246; *Kirtland v. Moore,* 40 N. J. Eq. 106; *Railway*

*Co. v. Maher*, 48 Ark. 522; *Stose v. Heissler*, 120 Ill. 433; *Boettler v. Tendick*, 73 Tex. 488; *Byrne v. Sisters of St. Elizabeth*, 45 N. J. Law, 213; *Elliott v. Assurance Co.*, L. R. 2 Exch. 243.

It has also been held that if the certificate is required to be in writing there can be no parol approval. *Lamprell v. Billericay Union*, 3 Exch. 283; *Russell v. Bandeira*, 13 C. B. (N. S.) 149; *Goodyear v. Mayor*, Har. & R. 67. Upon this point the authorities are not uniform, and we are not called upon to decide it in this case.

It is the settled law in this State that when a party fails to comply substantially with an agreement, unless it is apportionable, he cannot sue upon the agreement, or recover upon it at all. But when anything has been done from which the other party has received substantial benefit, and which he has appropriated, a recovery may be had upon a *quantum meruit* based on that benefit. And the basis of this recovery is not the original contract, but a new, implied agreement deducible from the delivery and acceptance of some valuable service or thing. *Allen v. McKibbin*, 5 Mich. 454. The plaintiffs appeal to this principle, and claim that they are entited to recover, under the common counts, although they have not obtained the certificate of the architects; and they rely upon *Wildey v. School-district*, 25 Mich. 426, in which this Court held that the architect was not made the sole inspector or judge of the work as it progressed, but that a superintendent was expected to be, and was in fact, chosen by the district, and that it was a reasonable inference that the superintendent was expected to supervise the work as it progressed, and to express his dissent with any portion not in compliance with the specifications. His powers were made, by the contract, as broad as those of the architect, and there was no consent in the contract that his decision should be subject to

reversal or review by his nominal superior; and for that reason it was held that whatever passed under his inspection as the work progressed, and was in good faith approved by him, expressly or by implication, was not open to objection on the part of the defendant afterwards, and that as to so much of the work, at least, the plaintiff had the same right to recover that he would have had if the proper certificate had been furnished him. And it was also said that,—

"In a clear case, where the contractor had undertaken, in defiance of the superintendent, to force upon the district one thing, where they had bargained for another,—as, for instance, one kind of roof where another was agreed for,—unless there was a subsequent assent to accept it, express or implied, we do not think the district would be held liable to pay for the thing substituted at all. The district is not to be forced to take what it never wanted or bargained for, on any pretense that it will answer their purpose as well, or that, even if it will not, it is still of some value, and should be paid for accordingly."

I do not think the case of *Wildey v. School-district* is an authority in support of plaintiffs' contention  The facts are entirely different. Here there was no superintendent, aside from the architects, agreed upon, and no approval, express or implied, of the architects, of the work as it progressed, or after it was completed. It is true that, as to the right of a party, in general, to recover upon the common counts, subject to a recoupment of damages, when he has not strictly complied with his contract, the Court expressed its adherence to the views expressed in *Allen v. McKibbin;* but the right does not exist in all cases, as was explained in that case, and more particularly in the later cases. *Martus v. Houck*, 39 Mich. 431; *Fildew v. Besley*, 42 Id. 100 (3 N. W. Rep. 278). In *Martus v. Houck* we stated what was held in *Wildey*

*v. School-district;* and upon page 436 the same Judge who wrote the opinion in that case, referring to it, said:

" We held, explicitly, that one contracting for a building to be put up according to certain specifications had a right to have what he bargained for. Unimportant variances may be overlooked or compensated for under a variety of circumstances which are not in question here, but departures from the contract which are susceptible of correction no one can be compelled to overlook or waive. Protection to equities cannot require it, and the acceptance of such a doctrine as the plaintiff here insists upon would take from an unscrupulous contractor the chief inducement to keep his promises. What is it to him whether or not he lives up to his agreement, if in any event he may collect for such performance as he tenders, and if the party contracting with him has no choice but to take at some price the building the contractor has seen fit to put up? The sanction the law would give to contracts under such a doctrine would, as nearly as possible, be worthless."

These parties are bound by the contract they entered into. The plaintiffs agreed to do the work, strictly in accordance with the plans and specifications, for a round sum. The defendant agreed to pay plaintiffs from time to time, as the work progressed, upon the plaintiffs' obtaining a certificate from the architects, deducting 10 per cent., until the job was completed and accepted. The balance and such percentage was to be paid, on the architects' certificate, after the expiration of 30 days after acceptance and approval by the architects and owner; and before each and every payment should be made a certificate was to be obtained from and signed by William Scott & Co., architects, to the effect that the work has been done, and materials have been furnished, in strict accordance with the agreement, drawings, and specifications, and that they consider the payment properly due.

The fact is undisputed that the plaintiffs have not

obtained the certificates required by the contract. They have not applied to the architects for such certificate. They have not obtained the approval or acceptance by the architects of the work. They have not performed it according to its terms. On the contrary, they were notified by the architects that it was not completed according to its terms and certain defects were pointed out. These defects the plaintiffs claim to have remedied. This is disputed by defendant. But, if plaintiffs did remedy the defects, they did not do so in the ways suggested by the architects; and they never have obtained the certificate of the architects after they claim the defects were remedied. The plaintiffs' assertion that they had remedied the defects did not give them a right of action. They could not substitute their assertion for the architects' certificate agreed upon between the parties; nor could they change the condition under which the defendant agreed to pay the balance 30 days after the architects' certificates of approval, and of its being completed according to the contract, to an agreement to pay without the certificate, and on their own assertion that it was completed according to contract. As was said in _Clarke v. Watson_, 18 C. B. (N. S.) 285:

"This is, in effect, an attempt on the part of the plaintiff to take from the defendants the protection of their surveyor, and to substitute for it the opinion of a jury."

The principles laid down in _Allen v. McKibbin_ do not apply to cases where the parties have by their agreement made some act or fact a condition precedent to payment, unless the other party has waived the condition. The waiver may be express, or it may be implied from facts and circumstances, as where the party relying upon the condition has accepted or appropriated the property or fruits of the labor of the other party. There is no evi-

dence in the record before us that can be construed into a waiver of the conditions precedent contained in the contract on the part of the defendant.

When a person contracts with another to build, or to do some portion of the work in constructing buildings, upon real estate belonging to the owner of such real estate, his taking possession after the other has left the premises cannot be construed as an unequivocal acceptance, although he thereby takes possession of, and appropriates to his use and benefit, the labor or materials of the contractor. He must do so, as a matter of necessity, in many cases, or suffer the property to stand idle and unused, to the great detriment of all parties, and especially so of the owner. The most that can be said, in such cases, is that the act of the party, and all the circumstances, may be taken into consideration in the determination of the question whether there is an implied waiver of the condition precedent. Under the testimony appearing in this record, the fact of the defendant's taking possession was not such an acceptance as relieved the plaintiffs from the terms and condition of the contract requiring them to obtain the architects' certificate before they were entitled to payment.

As there must be a new trial, it may be well to notice one other matter of controversy between the parties, and that is with reference to substituting the soap-stone finish in the coves for pebbles and shells, as required by the specifications. This substitution cannot be held to have been made with the owner's consent previously obtained. Mr. Crittenden was not defendant's agent for the purpose of making changes in the plans and specifications, and no authority was shown for him to do so. The contract provided that such changes should be made in writing signed by the owner and architects. The change was not made in writing, and Mr. Crittenden was neither

owner nor architect.    Whether this provision of the contract has been waived, and the substitution ratified, will be, upon a future trial, a question of fact, under all the circumstances, to be submitted to the jury.    If any question exists as to what the specifications require, the contract provides that the architects shall determine as to their meaning; and this power cannot be taken away from the architects agreed upon, and left to the construction of other plasterers or architects.    The court erred in permitting this to be done upon the trial.

The judgment must be reversed, and a new trial is ordered.

MORSE, LONG, and GRANT, JJ., concurred.