MORAN *v.* SCHMITT.

BUILDING CONTRACT—EXTRAS—ESTIMATE OF ARBITER—RIGHT OF ACTION.

    A contractor for the erection of a lighthouse sublet a portion of the work under a contract which provided that the work should be performed under the direction and to the satisfaction of the government engineer or his agent, that alterations should be made in the work as required by the contractor, and that the value of extra work should be fixed by the engineer, or some competent person appointed by him. The engineer named in the contract was at no time present, but the contractor instructed the subcontractor to do whatever the government inspector, appointed by the engineer, wished him to do. The subcontractor performed additional work under the direction of such inspector, but the latter, on application, refused to make any valuation thereof. *Held,* that upon such refusal the subcontractor was entitled to maintain an action for the extras so furnished. HOOKER and MONTGOMERY, JJ., dissenting, on the ground that the contract expressly required the valuation to be made by the engineer, or by some person appointed by him, and that the appointment of the person to whom application was made, as inspector, did not necessarily authorize him to represent the engineer in making such estimate.

Error to Wayne; Lillibridge, J. Submitted January 8, 1896. Decided May 19, 1896.

*Assumpsit* by Fred T. Moran against John P. Schmitt for extras furnished under a building contract. From a judgment for plaintiff, defendant brings error. Affirmed.

*Frank A. Noah* and *John G. Hawley*, for appellant.

*George Gartner* (*Fred A. Baker*, of counsel), for appellee.

LONG, C. J. This is an action of *assumpsit* brought by the plaintiff as assignee of Ferdinand Scheibner.

The defendant had a contract with the United States government to build a lighthouse, tower, keeper's dwelling, and outbuildings, at Old Mackinac Point. He was a carpenter, and not a mason, and he sublet the mason-work to Scheibner. The contract between them was in writing, in which defendant is named as party of the first part, and Scheibner as party of the second part. The contract provides as follows:

"1. The said second party shall and will well and sufficiently do and finish, under the direction and to the satisfaction of William Ludlow, or his agent, all of the works included in the drawings and specifications, and which are subjects of the tender, for the excavations, drains, stone masonry, damp course, and asphalting, ashlar stone work, cut stone work, brickwork, and concrete floors required to complete a certain lighthouse, tower, keeper's dwellings, and outbuildings, to be built at Old Mackinac Point light station for the United States government, under William Ludlow, lighthouse engineer for the Ninth and Eleventh districts, to be erected for the said first party in strict accordance with the drawings and specifications furnished therefor by William Ludlow, engineer, according to the true intent and meaning of the same; and whenever it appears that the work intended to be done, or any matters relative thereto, are not fully detailed or explained in the said drawings, but are mentioned in the specifications, or *vice versa*, the said second party shall apply to the said first party for such further

drawings or explanations as may be necessary, and shall conform to the same, as part of the contract.

"2. Should any difference exist between the drawings and the specifications, the decision rests with the engineer, whether more or less expensive to the said second party. No alleged admission or inadvertent neglect on the part of the engineer will be taken as an excuse for bad work.

"3. The said first party may require alterations in the work shown or described in the said drawings or specifications, which the said second party agrees to do according to the directions which may be given, and in every such case the price hereby agreed to be paid for said work shall be increased or decreased, as the case may require, according to a fair and reasonable valuation of the work added or omitted; the value of such work to be fixed by fair admeasurement and valuation, to be made by the engineer, or by some competent person appointed by him. Such alterations or variations shall in no way render void this contract, and no claims for such alterations or variations, or the increased or decreased price therefor, shall be valid, unless founded upon written agreement.

"4. No deviations whatever are to be made in the execution of the works, from the drawings and specifications, without consulting the said first party for his approval."

No difference between the drawings and specifications existed, and no questions arose under the provisions of the contract above set forth. But, in the construction of the work provided for by this subcontract, certain alterations were made, necessitating a large amount of additional work not shown or described in the drawings and specifications.

The defendant, the general contractor, was there at the commencement of the work, but after a time was there only occasionally, as the work progressed. Mr. Scheibner entered upon the work under his subcontract, the defendant being there at the time; and, when he was about to leave, he said to Scheibner to go on and do whatever Mr. Overton wanted him to do. Mr. Overton superintended the work for the government. He was sent there by Mr. Ludlow, the lighthouse engineer, for

that purpose, and was the only government inspector at the work, and as such, under the contract, was the agent and appointee of Ludlow, Mr. Ludlow not being there at any time during the progress of the work. In the construction of the work by Scheibner under his contract with defendant, and under the directions of Overton, alterations were required which greatly added to the work specially provided for in the subcontract. This additional work was done by Scheibner, and materials were furnished by him, under the directions given him by Overton, in accordance with the terms of the contract. After the work was completed, everything was settled between the defendant and Scheibner, except for the extra work and material. This suit is brought to recover from the defendant the value of these extras and material, Mr. Scheibner's account having been assigned to the plaintiff in this case. These extras, Scheibner claimed, amounted to $2,589.65. Defendant pleaded the general issue, and gave notice thereunder that he would claim damages for noncompletion of the contract within the time specified, and also filed a bill of items as set-offs against plaintiff's claim. On the trial, plaintiff had verdict and judgment for $2,300.

It will be observed that the first section of the contract provides that the second party shall and will well and sufficiently do and furnish, under the direction and to the satisfaction of William Ludlow or his agent, all the work provided for in the contract, including the extra work that was to be done; and by section 3 the valuation thereof was to be admeasured by the engineer, Ludlow, or by some competent person appointed by him. The trial court directed the jury that the defendant was liable for all the extras furnished by Scheibner, under the direction of Overton, in doing this work. It is contended by the defendant that the value of this work was never fixed by a fair admeasurement and valuation made by the engineer, or any competent person appointed by him, and

that, therefore, the court was in error in directing the jury that a recovery could be had by the plaintiff for these extras.

Mr. Scheibner was called as a witness upon the trial, and testified that the defendant gave him the plans and specifications from which the work was to be done, and that he went there and commenced work in May, 1892, and continued until all the work was done; that Mr. Overton was the inspector, and inspected the work, and was the only man he saw there in charge; and that Mr. Schmitt, the defendant, told him that Overton was employed by the government. The witness was then asked:

"What did Mr. Schmitt state to you about Mr. Overton,—about his control of the work?

"A. He said I should go on and do whatever Mr. Overton wanted me to do,—I should do it. Mr. Schmitt was there about four or five times during the whole summer. As soon as he left— He was there for a day or so, and took a boat and rowed off on the lake, and never showed up. He had no other agent there besides Mr. Overton. I did go on and follow the directions of Overton. I performed my contract there so that it was accepted by the engineer. It was turned over to the government. I did some extra work at Mr. Overton's direction."

After stating what this extra work consisted in, he stated:

"Right at the start, I spoke to Mr. Overton about my extra work. I was to work about a day and a half, and I asked him to give me a statement of the extra work. Of course, I had to go down deeper with my foundation; and I told him to give me a paper in the evening, but he would not do it. I took down the number of cubic feet, but he never gave me a paper."

He was then asked:

"Did he ever give you an estimate on it?

"A. No, sir; he said he could not do it; he had no power to do it. I did go on and do the work."

The defendant was called as a witness, and was asked in reference to the directions which he had given Scheibner:

"So far as the examining any of the work was concerned, of Mr. Scheibner, the only boss outside of yourself was Mr. Overton, the superintendent?

"*A.* Yes, sir; he was superintendent.

"*Q.* And you relied upon Mr. Overton to see that that was done?

"*A.* Yes, sir; I was working under him."

Witness was then asked:

"And Mr. Overton was there. Of course, you wanted to satisfy him, because he was the government inspector?'

"*A.* Certainly.

"*Q.* And you told Mr. Scheibner to do as Overton told him?

"*A.* May be I did."

Mr. Overton was called as a witness, and testified that Gen. Poe appointed him as inspector on this work; that he received his papers from him, and was sent there by Col. Ludlow to do the superintending on the job; that he was there all the time, and was the only government inspector there; that he had the authority of United States government lighthouse engineer, and was there to superintend this construction; that he remained until its completion. It appears from his testimony, also, that he compelled Scheibner to take out a part of the work and relay it, and that all the work done by Scheibner was under his direction; that the government paid him three dollars per day for his services, and he received no pay from the defendant; and that he never made any estimate of the value of the work done by Scheibner.

We think, upon the evidence given by the plaintiff, the court was not in error in submitting the question to the jury.

The court instructed the jury, substantially, that the contract price had been paid, but that the contract provided that there might be changes and alterations in the work, and that the plaintiff's claim was based upon the valuation of services and material for the additional work. The court then stated:

"Now, you will see that the provision here is that these alterations must be directed by the party of the first part, Mr. Schmitt, and that the valuation of them shall be fixed by the United States engineer, or his authorized agent. It is undisputed that Mr. Overton was the inspector of the United States government appointed to superintend that work. It is claimed on the part of the plaintiff in this case that early in this work, when the work was first considered, Mr. Schmitt told Mr. Scheibner that Mr. Overton was superintendent there, and he had to do, in this work, what Mr. Overton told him to do. You will recollect that there has been testimony to that effect; that Mr. Schmitt told Mr. Scheibner that Overton was superintendent of this work, and, in the matter of changes, whatever Overton told him to do, to do. Now, you will remember that testimony, gentlemen. Then Mr. Overton became agent of Mr. Schmitt, and whatever he told Mr. Scheibner to do, or whatever he approved of Mr. Scheibner's doing, was binding upon Mr. Schmitt in this case. I believe Mr. Schmitt said the other day he did not recollect stating it to Mr. Scheibner; but if you find he did tell Scheibner that Overton was superintendent there, and to do as Mr. Overton wished, then Mr. Overton's acts bound Mr. Schmitt. He was his agent, and Schmitt is liable for such extras as you believe Overton directed or approved. Now, in regard to this latter clause: He could not bind him to build an entirely different lighthouse, but any legitimate changes from the plans would be binding; and, in regard to this last clause, that these alterations shall not in any way render void the contract, it is perfectly proper for these parties to waive a part of the written contract. They can waive the stipulations in this contract, and I charge you, as I am requested, that the provisions of the contract as to alterations and variations to be founded upon a written agreement might be waived by the parties to the contract; and if directions were given by the agent, Mr. Overton, involving so much extra work, and such were furnished with the knowledge and consent of the defendant or his agent, then the provisions as to the requirements were waived, and the defendant is liable for the extras so furnished. That is all I need to say to you on the extras."

Defendant requested the court to charge the jury:

"By the terms of the contract, plaintiff could not recover for extras without applying to Engineer Ludlow to have them allowed, and could not recover, in any event, anything more than thus allowed."

This was refused, and the court charged the jury, as requested by the plaintiff, as follows:

"If extras were furnished, and Scheibner applied to Overton for an estimate, and Overton either neglected or refused to make or give such estimate, then the plaintiff is entitled to recover for the extras so furnished."

The only contention in the case arises over the refusal of the court to charge as requested. It is contended by counsel for defendant that, under clause 3 of the contract above set forth, the plaintiff would have no cause of action against the defendant until the value of the extras had been fixed by the engineer, or by some competent person appointed by him; and counsel rely upon *Hanley* v. *Walker*, 79 Mich. 607, and *Guthat* v. *Gow*, 95 Mich. 527. We think these cases are not decisive of the present. The contracts in these cases had somewhat similar provisions. In *Hanley* v. *Walker* it was said:

"It is claimed by defendant's counsel that the failure of plaintiffs to complete the work to the satisfaction of the architects, and procure their certificate, is a complete defense to this action. I think the point is well taken. There is no claim upon this record that the architects have been guilty of any fraud, or that there has been any collusion between them and the defendant. There is no pretense that the plaintiffs have applied for or requested the certificate required by the contract."

In *Guthat* v. *Gow* no request was made of the architect to fix the value of the extra work, and no showing was made to the architect as to what the extra work consisted of; and this court, in passing upon that question, followed the rule laid down in *Hanley* v. *Walker*.

In the present case it clearly appears, and without dispute, that whatever extra work and extra materials were furnished by Scheibner were all done and furnished under

the direction of Overton. Overton, therefore, stood, as to Scheibner, in the place of the defendant, and Overton's acts would bind the defendant in all respects.

The third clause of the contract is the one providing for the valuation of the extra work. This valuation was to be made, by the terms of the contract, by Mr. Ludlow, or "by some competent person appointed by him." Mr. Overton's testimony clearly shows that he was the agent appointed by Ludlow. He was the only government inspector there, and was acting in the place of Ludlow, and by Ludlow's directions. He was therefore the proper person, and the only person, to whom Scheibner could apply to have the valuation fixed for these extras. Mr. Scheibner testifies that he did make application to Overton to have these extras valued and admeasured, but that Overton refused to make the valuation. Some contention as to the exact time when Overton refused to fix this valuation is made, but it is apparent from the testimony that Overton was asked to make the admeasurement and fix the value, and upon one occasion refused; and it also appears that though he was there at the time of the completion of the work, and accepted it on behalf of the government, yet he neglected to make the admeasurement of the value of the extras, although he had been asked by Scheibner to do so. Under these circumstances, we think the case is clearly distinguishable from the cases cited by counsel for the defendant. It is well settled that an estimate or certificate of the arbiter is a condition precedent to the right of action under a contract conditioned as is the present one. But it is also well settled that such condition may be waived. This rule was recognized in *Hanley* v. *Walker, supra;* and it was the decisive question there, as it is stated that "there is no pretense that the plaintiffs have applied for or requested the certificate required by the contract." Speaking of the waiver of the condition, it was said:

"The waiver may be express, or it may be implied from

facts and circumstances, as where the party relying upon the condition has accepted or appropriated the property or fruits of the labor of the other party. There is no evidence in the record before us that can be construed into a waiver of the conditions precedent contained in the contract on the part of the defendant."

In the present case it is not disputed that the defendant accepted the work with all the extras. Overton was the superintendent of the work, and agent of Schmitt; and it was his duty, under the contract, to make the estimate. Schmitt cannot now take advantage of the failure of Overton to do what the contract required.

In *Smith* v. *Railroad Co.*, 36 N. H. 458, it was said:

"If the party sued has, by his own act or neglect, prevented the performance of a condition precedent, he cannot take advantage of his own wrongful act; * * * and for this purpose the acts of his agent, and of persons for whose conduct he is responsible, will have the same effect as his own."

The case of *Herrick* v. *Belknap's Estate*, 27 Vt. 673, arose upon a contract to construct a railroad, and in which the engineer of the road was made the sole arbiter of the work, as to quantity and quality, and from whose judgment there was to be no appeal. An estimate was made by the engineer, and one of the contentions of the plaintiff was that this engineer, without the fault of the plaintiff, failed to make an estimate within the fair import of the contract. Mr. Justice Redfield, in speaking for the court, said:

"We need, perhaps, spend no time upon the question what would be the rights of the defendants if no estimates of the plaintiff's work had been made by the company's engineer, for the plaintiff bases his claim upon no such state of facts. * * * If the plaintiff's work had failed to be estimated through the fault of the engineer, or the company, or Belknap, it does not now occur to me that there would probably be any difficulty in obtaining a recovery at law."

In *Smith* v. *Brady*, 17 N. Y. 173, where a certificate was held a condition precedent, it was said:

"Had it been shown by the plaintiff that he had made application to the architects for the requisite certificate, and that they had obstinately and unreasonably refused to certify, it might have been proper, perhaps, for the plaintiff to establish his right to recover by other evidence."

The rule is well settled that an award or estimate, if made, can be impeached for fraud, or such gross mistake as would necessarily imply bad faith, or failure to exercise an honest judgment in the premises. *Kihlberg* v. *U. S.*, 97 U. S. 398; *Martinsburg & Potomac R. Co.* v. *March*, 114 U. S. 549; *Sweeney* v. *U. S.*, 109 U. S. 618. The case here, however, is one where the arbiter chosen by the contract absolutely refused to make an estimate. What his reasons were, are not stated or explained. He was there in charge, and it is conceded that he was the authorized agent of Ludlow. Ludlow knew nothing of the work. These foundation walls were down deep in the ground, and Overton was the only one who knew the extent of the work, or its amount and character. He was also the agent of Schmitt, and, if he had made the estimate, Scheibner would have been bound by it, unless there was something to impeach it, or to show bad faith in making it. It is equivalent to bad faith for him to refuse to make it, under the circumstances. The plaintiff, under such facts, cannot be held to have lost his action because of such refusal to act. As was said by counsel for plaintiff: "Supposing the arbiter should die, or for any reason become incapacitated, can it be contended that a party who had done work in reliance upon a fair estimate, and which could not be procured, would be left remediless?"

The court properly instructed the jury, under the facts shown in the case.

The judgment must be affirmed.

GRANT and MOORE, JJ., concurred with LONG, C. J.

HOOKER, J. (*dissenting*).   Schmitt, a government contractor upon lighthouse work, let a subcontract to Scheibner, the plaintiff's assignor.   The first clause of the contract provided that Scheibner should "well and sufficiently do and finish, under the direction and to the satisfaction of William Ludlow, or his agent," the work contracted.   The following provision relating to extras was made a part of the contract, viz.:

"The said first party may require alterations in the work shown or described in the said drawings or specifications, which the said second party agrees to do according to the directions which may be given, and in every such case the price hereby agreed to be paid for said work shall be increased or decreased, as the case may require, according to a fair and reasonable valuation of the work added or omitted; the *value of such work to be fixed by fair admeasurement and valuation, to be made by the engineer, or by some competent person appointed by him.* Such alterations or variations shall in no way render void this contract, and no claims for such alterations or variations, or the increased or decreased price therefor, shall be valid, unless founded upon written agreement."

Ludlow was the government engineer, and Overton, an appointee (*i. e.*, an agent of Ludlow), had the supervision of the work.   Schmitt directed Scheibner to follow Overton's instructions as to extras, and he did so; and this action is brought to recover upwards of $2,500 for such extras.   The defendant claims that no such admeasurement or valuation as is required by the contract has been made.   Scheibner testified that at the start he asked Overton to give him a statement of the extra work, but he refused, and told him that he had no power to do it; yet Scheibner says that he went on and did the work as directed.   The circuit court held that the inspector, Overton, was the authorized agent of Ludlow, the engineer; and as he was the only one representing Ludlow, who was at no time present at the scene of the building, application to Overton was all that was necessary.

The contract expressly provides for an inspection by Ludlow, or his agent, but it requires the estimate and valuation to be made "by Ludlow, or some competent person appointed by him." A reasonable interpretation of this last provision is that, if Ludlow was unable or indisposed to make the estimate, he might appoint some one for the purpose, upon application. If, on application, he had refused to do either, and Schmitt had thereupon refused to adjust the matter, it is probable that the courts would relieve the plaintiff; but, in my opinion, we cannot say that the appointment of Overton as inspector authorized him to make estimates and valuation. Plaintiff should have made an effort to comply with the contract, before bringing an action against the defendant.

I think the judgment should be reversed, and a new trial ordered.

MONTGOMERY, J., concurred with HOOKER, J.